Next case for argument is Wright v. City of Ponca City. 22-6137. Counsel? Yes. My name is John Derrick Engel. I represent the estate of Gary Shower in his substantive due process claim against three EMTs who consciously disregarded and caused great harm to an injured patient. We also have a substantive due process claim against Ponca City for their inadequate training, which in reality was an unwritten policy encouraging the violation of established medical protocols. Unfortunately, the lower court granted defendants motion to dismiss, and that is why we are here today. Pertaining to the EMTs, there is a case remarkably similar known as Zucardi from the Third Circuit. In the Zucardi case, they set forth a standard which has been reviewed by the Tenth Circuit in the Green case, and the standard is an intermediate type standard. The Tenth Circuit has talked about intent to harm in civil rights cases, and that applies like in a police car chase. And the standard selection seems to, and from the cases, is based upon the amount of time the state actors had to consider their actions. In a police car chase, there's no opportunity to really consider what is going on. Therefore, the threshold is very high. The plaintiff must show an intent to harm. The lowest standard, of course, is the deliberate indifference standard where the actor has sufficient time. But in Zucardi, they created an intermediate standard, and in affirming the denial of summary judgment by the defendants in that case, they specifically issued a jury instruction that says the defendant, if they consciously disregard, not a substantial but a great risk that serious harm would result from the actions. Other language within that case uses the word shocking the conscience. We believe that the actions of the EMTs in this case clearly shock the conscience. The EMTs were warned... Counsel, may I interrupt you? Yes, please. What is the clearly established law that supports your claim? Well, the Green case against... Are you talking about the standard? I'm sorry, I'm... Yeah, well, I'm just... What is the law that establishes your constitutional violation? Well, it's substantive due process claim that they cannot cause the harm in this... I'm sorry I'm being so elementary. Other than Zucardi, what are you asking us to... What is the decisional law of this case? What are we supposed to be looking at to determine whether or not there was a constitutional violation as you've alleged it in this case? The Tenth Circuit has no previous cases similar to this. The only similar case is Zucardi. Now, the Tenth Circuit has made rulings in cases where a patient was in a hospital, where they voluntarily availed themselves care of the hospital. But like Zucardi, and as the Zucardi court, or Third Circuit I should say, explained on the Brown case, which was decided after Zucardi, they said the difference between Zucardi and all the other cases is that the actors caused the harm. They were not failed to rescue, not failed to monitor, not failed to do an affirmative surgery. Their actions actually caused the harm. And because of that, we're asking the court to adopt the standard in Zucardi, which again, the court apparently reviewed... And it did so apparently with approval because they specifically cite this standard in the Green case. I hope I've addressed that. In this case, the shocking, the conscience was clearly occurring as the EMTs were warned by dispatch before they ever arrived on the scene that Mr. Schauer could not move or feel his arms and legs. Once they arrived on the scene, one of the officers at the scene specifically told the EMTs, Mr. Schauer cannot feel or move his legs or one of his arms. The EMTs then examined and talked to Mr. Schauer. Mr. Schauer said, I can't feel or move my legs. I can move my right arm. They had that opportunity to examine him. And again, this was not a situation, again, like a police car chase. They weren't trying to pull him out of a burning car that was about to explode. He wasn't hanging personally off a cliff. There was not a shootout or anything like that. This was a stable situation, which clearly this intermediate standard applies. Despite all these warnings, their own examination, they chose to pick up Mr. Schauer without first immobilizing his neck or back. In doing so, his head flopped forward. He was further injured. And the affidavit from our doctor says that that further injury put him in a life-threatening situation. Unfortunately, the lower court disagreed and said, we feel it's a jury question. We feel that alone is enough facts to make this a jury question as to whether this shocks the conscience. Well, back to clearly established law. I'm not sure I know the answer to your question. Are you saying Zicardi supplies the clearly established law? Well, we think it's persuasive authority, absolutely. All right. Well, what from the Supreme Court or our circuit would be clearly established law that would? Well, I think we could, in reference to the Taylor case from the Supreme Court, would be something that would apply. But there is no EMT case that apparently has been decided in the Tenth Circuit. So how should we use Green, just to follow on Judge Phillips' question? Well, it's a state actor. This is a case involving state actors. And if it shocks the conscience, which Green apparently adopts Zicardi in that standard, then we have a violation of the substantive rights, the substantive due process. That's where we are on this. There is no previous Tenth Circuit EMT case that we can find like this. The only one we could find was Zicardi, which this Court looked at for other purposes, specifically the standard. But it did not involve EMTs in this situation. Why isn't it negligence or gross negligence? Well, that's what I was just getting to. The actions from the warnings, and most importantly, and I promise I'm going to answer that question. The Court says it doesn't shock the conscience because Mr. Schauer was apparently drunk. Same thing in Zicardi. Now, the Court tries to minimize Zicardi's intoxication, but it was a summary judgment. It was clearly established he had been drinking and was drunk. So the Court says because Mr. Schauer was drunk, this doesn't shock the conscience. However, the protocols, the medical protocols, which the EMTs admit they're required to follow, and this weaves in with our case against the city, too. They give seven questions that all EMTs must follow that apply to these EMTs. It's at a state level. The first three questions, is the patient able to communicate effectively? They said no, he can't. Is the patient drunk or intoxicated? And does the patient have neurological deficits? The answer is yes, yes, yes. You only need one of seven, according to the protocols, to invoke immobilization. It should be done. The first three, we stopped after that. The first three were all yes, yes, yes. The defendants I know are going to argue that we just thought he was drunk, we didn't need to immobilize. However, he also had clear neurological deficits. They examined him. They were warned three times by multiple persons. Dispatch, the police officer, and Mr. Schauer himself. I can't feel anything. I can't move. Yet they chose to ignore that. They chose to consciously disregard. That's what shucks the conscience. That's why it's not medical negligence. That's not why it's not mere malpractice. That is a violation of civil rights. In Zarkadi, the facts weren't nearly as strong. They were never warned, the EMTs in Zarkadi. They merely arrived at the scene, and he said, I think I've hurt my neck. They said, oh, you're just drunk. They picked him up. Same thing is what occurred here. Those EMTs in Zarkadi were never warned. Here they were warned three times and examined him. Was he able to communicate? Yeah, somewhat. They said he was doing a poor job. But they admit that he stated, I can only move my right arm. He said, I can't feel my legs. I can't feel my left arm. They did this. That's why it's not negligence. That's why it's not malpractice. The facts are stronger in our case than Zarkadi by a mile. And in Zarkadi, the court said it shocked the conscience. At least let a jury decide it. Just out of curiosity, why were the claims dismissed against the EMTs in state court, if I have that right? They weren't dismissed in state court. We were granted – well, I'm sorry, we don't have a – in state court, we can't – it was filed under gun military claim. We can't sue the EMTs directly. We can't sue the city of Paucus City. And they paid us the limits of their gun military claim policy. That's why they were dismissed. It was merely procedural. We were paid the small amount under the gun military claim policy in state court. But this is the civil rights claims. Counsel, can you speak to the basis for your failure or your claim against the municipality? So you're saying that your claim against the city is a failure to train claim? It is, which is essentially – and the same thing was in Zarkadi. Just your case. Yes, yes. It was for an unwritten policy. An unwritten policy? Yes. Okay, so you're not relying on – I just want to make sure I understand the basis for your claim against the city to understand how to decide. Is it a failure to train claim that requires an underlying constitutional violation by the allegedly untrained officer? Well, I think we call it a failure to train. It could be called, I think, an adequate training when the real policy – they say, and in fact the city is going to – I'm sure going to say, we told them to follow the protocols. Yet the testimony from the EMT is that, yes, if we had followed the protocols, Mr. Schauer should have been immobilized. And I'll read to you the quote. Counsel, you didn't really answer my question. I'm sorry, I'm sorry. I'm trying to understand if the basis for your claim against the city requires an underlying constitutional violation by the EMTs. I believe so, yes. It does? Yes, yes, absolutely. And we think we've shown that they have violated that substantive due process. EMT said this, the question, in looking at the information you had at the time, when we looked at the protocols, you agreed he wasn't completely oriented, there was evidence of intoxication, he had the neurological deficit. Those protocols all would require the mobilization of his spine, correct? Answer, yes. But you didn't follow those protocols because routinely you didn't put them on folks even though it may be indicated, correct? I'm not sure what that shows. Does that show that the city failed to train or that the EMTs just chose to ignore the training? They admitted, the EMTs admitted this is the standard that Ponca City wants them to follow. And they said in their statement to police, this was investigated by the police department afterwards, their statements to police were we don't like doing this and this is with the blessing of the city because putting it on drunk folks is a real pain.  is the exact reason the protocols say when someone is intoxicated, you are supposed to mobilize. What they're using as a shield is actually strengthening our case because it requires a mobilization. Whether he was drunk or sober, he was supposed to be immobilized, even more so when he's drunk. That's what the protocols require. That's why it's not mere malpractice, especially in light of all the warnings. But in our briefs, we go through clearly the law that says these allegations of a custom, routine, standard, all that meets the pleading requirements. Again, we were poured out on a motion to dismiss. This isn't summary judgment. Meets the necessary pleading standards to go forward and even do more discovery on the unwritten policy that required them to violate the protocols and don't immobilize the drunk folks. I'm out of time, so I'm going to stop there, unless you all have any questions. Good morning, Your Honors. Thomas LeBlanc on behalf of Kelly Kincaid, Kaitlin Lawson, and Irving Altamirano, three EMTs employed by the city of Ponca City. My co-counsel, Randall Wood, is here on behalf of the city. He and I have agreed to share our time evenly this morning. At around midnight on December 13, Ponca City Fire Department dispatched three EMTs to a call involving a man lying down on a sidewalk in front of a bar. They drove their ambulance. They arrived. They got their emergency medicine equipment. They got their gurney out of the ambulance. They approached Mr. Schauer on the ground, spoke to him, tried to get information from him, had difficulty getting information from him. It was clear that he was very intoxicated. He showed no signs of trauma. He gave no history of trauma. He gave no explanation of how he ended up on the sidewalk. These three EMTs conducted an assessment, took vital signs, and did what EMTs do, which was to load him into their ambulance and drive him emergently to the nearest hospital. But you're leaving out the big facts, which is the EMTs were told about his condition three times. Oh, there's no question, Your Honor. And the plaintiff sued the city of Ponca City under a negligence theory in state court, and the city of Ponca City settled that case on behalf of itself and the EMTs. Your Honor, there's no question these EMTs were negligent in their care of this man on the sidewalk. What the plaintiff is trying to do, though, is for the first time, which has never been recognized in this Tenth Circuit District, is to convert a medical negligence case into a substantive due process case. And they cited no Tenth Circuit case law, no district court case from anywhere in this district, and no Supreme Court case that has ever allowed that. By contrast, the U.S. Supreme Court in Descheny made it very clear, Your Honor, the 14th Amendment is intended to protect people  That's the intent of the 14th Amendment. Does Descheny apply here if we don't have state custody or state-created danger? It absolutely does. As the district court recognized, absent those two exceptions in Descheny, either a custodial special relationship or a state-created danger, absent those two exceptions, this claim doesn't exist. And in fact, plaintiff relies very heavily on Zaccardi, an aberrant case out of the Third Circuit that has never been followed by any other court. What about our Green case? Thank you for asking, Your Honor. In the Green case, which was a slow-speed law enforcement officer looking for someone who he thought had stolen gasoline. And what the court was grappling with in Green was, in part, what's the clearly established law here? Is it clearly established that entering an intersection at a high rate of speed without lights and sirens violates the 14th Amendment due process protection? And the court looked at, well, first of all, is there an intent to harm if that's the standard? And the court decided there's no intent to harm here, so no violation. The court then looked at, well, what if we apply the lower deliberate indifference standard? And the court in Green determined that is a shock to conscience standard and that under these facts there was no shock to the conscience. However, the court also did a clearly established analysis. And it was in that context that this court in Green looked not only at the Zuccotti case, but it looked at and discussed cases from the First Circuit, Second Circuit, Sixth Circuit, Seventh, Eighth, and Ninth Circuits. In grappling with whether or not the law was clearly established, Zuccotti was one of a number of cases that the court made reference to. In no way, shape, or form did the court endorse or adopt or approve Zuccotti. And in fact, what the court determined after considering Zuccotti with all these others was that the law was not clearly established, that under those facts a 14th Amendment violation occurred. The district court here didn't pass on the clearly established prong, right? The district court did not, Your Honor. But as we argue in our brief, and we do cite case law in support, this court can affirm the dismissal on behalf of the three individual defendants on any basis, including clearly established. The failure of the plaintiff to meet their burden to show that the law was clearly established. Your Honor, this court can look at both whether or not there's a substantive due process violation, which there clearly was not, but could also look at the clearly established prong of the qualified immunity defense as well. But you're right, the district court did not evaluate that. Plaintiff, though, has conceded in their brief and this morning standing here, that there is no Tenth Circuit case law on point and there's clearly not a consensus among the other districts on this issue. And I think it's very important to understand in the Tenth Circuit cases that we did cite, which include, of course, the Johnson case and the Gray case and the Villapando case. All three of those cases, the Tenth Circuit started with the premise recognized in DeShaney that there is no constitutional guarantee under the 14th Amendment for medical services nor for competent or adequate or appropriate medical service. And in each one of those cases, absent one of the DeShaney exceptions, there is simply the 14th Amendment's not implicated. Plaintiff places great emphasis on the suggestion that, well, Zirconi's different because the allegation there was that the EMTs caused the injury. Causation of injury is an integral aspect of every single claim, right? In the Johnson case, the allegation was that by failing to properly prevent and treat infection within the hospital, that the state defendants caused injury and death. In Gray, the issue was failure to properly monitor a seizure patient while withdrawing medication from that patient, knowing that there was a significant risk that this person is going to seize. That's part of the process. And yet they left him unattended and did not monitor, and as a result, he died. State actor caused death was the allegation there. So is your position that there's no set of facts whatsoever that the EMTs could be liable, or that there could be liability for substantive due process? Your Honor, I would say it would be extremely unusual. It would be a very rare circumstance. And what we have, one that's never been reported in any case, and what we have here, though, is routine, customary medical service being provided by EMTs. Show up, assess, make a judgment, and then transport to the hospital. They did not appreciate what we know later to be that this particular patient had a spinal cord injury, Your Honor. I mean, I hate to say never, but it's extremely difficult to conceive of a scenario where routine medical care, be it in the hospital or by EMS technicians, could result, although I guess it's possible. Well, what if they had recognized it? What if they just said, looks like there's a good chance if we lift this guy, it's the end. But bowling starts in 30 minutes. Let's get out of here. Yes, Your Honor. I mean, I suppose it's conceivable that a stated known recognition that what we are about to do will harm this man, then I think at that point you're now reaching an intent to harm kind of a scenario where the 14th Amendment could be implicated. Here, according to the plaintiff's own pleading, paragraph 15 in their amended petition, the EMTs thought he was just drunk. They did not appreciate or suspect a spinal cord injury. That's kind of a tough sale. And the drunk people generally don't say, I can't move anything but my right arm. Well, I will confess to you, Your Honor, I don't have much experience as an EMT dealing with drunks on a regular basis. These folks do. And in the context of what they deal with and see on a regular basis, the fact that he was saying, I can't move or I can't feel, but he was also moving his neck around. Who was he saying that to? I mean, in the videos that are in the record, you know, it certainly seems like he's unable to speak and that there's a lot of conversation among the officers observing that he cannot feel. The conversation seems to be more about that than about the fact that he was intoxicated. You're correct, Your Honor. And, again, part of the analysis here is what information did these EMTs actually have? Mr. Shower himself was not particularly verbal, was not particularly responsive to them. They were being told by others that he said he couldn't move, that he couldn't feel his legs. It was a mixed picture. And, again, that's the reason the negligence action settled. That's the reason we have a state tort system that allows for a state law action to be brought against these EMTs, and in this case because they are government entities, against their employer. Counsel, you said you were splitting time, and I'll leave it to you, but... I'm going to stop now, Your Honor, and let Mr. Wood take the rest of the time. I appreciate your... Thank you. Thank you. Good morning, Your Honors. Randall Wood speaking for my client, City of Ponca City. My time is brief, so I'll try to cut to the chase. So we are here on a order that sustains a motion, a 12B6 motion. And so we are confined to and are... The claims against City of Ponca City are weighed or evaluated upon what is in the amended complaint. And so what's unusual about this case, and in my experience, the claims against City of Ponca City, are that here we have the plaintiff saying that the EMTs are told that this man can't move his arms or legs. They arrive, they're told again the man cannot move his arms or legs. They are informed by the man he can't move his arms or legs. They know what to do. They know what the basic protocol is. They know that they are to immobilize the spine of a person that they know has a spinal cord injury. And yet the claim presented against the City of Ponca City is failure to train. We heard that affirmed today. So if that's the case, if they knew what to do, then the causal connection between anything that the City of Ponca City did or didn't do or somehow failed to train disappears because they knew what to do. And I think the analogy that comes to mind are those cases that say that, well, look, if you say that that police officer over there, you didn't train him on don't rape women, please don't, well, officers know that. Don't, you know, harm people for no reason or murder people on the sides of the road. Officers know that. But here we even have more than that, that they even specifically say from the very mouths of the EMTs that they knew what to do and were familiar with all these specific protocols. What if there's a sufficient allegation in the complaint that we have an informal rule that's different for people who appear to be drunk? Yes. And that would violate the protocol you just indicated. So I think that the discussion of, you know, well, we didn't do something because the man was intoxicated and that's just normally what we do, my view of it is that, but that's not what the claim is. The claim, in fact, I would say that's entirely besides the point because the claim is not that they failed to properly treat his intoxication. The claim is very specifically pled that this was a man that has spinal cord injury, not that they failed to treat his intoxication or that this was a man going into DTs or withdrawal and they didn't apply maybe benzodiazepines or some other form. I have cases like that. But this is not that case. What if there is a sufficient allegation or an inference from the allegation that there was an informal rule not to board people who appear to be drunk and the city knew that there was this informal rule and they just let it abide? That's my question. But I think the complaint says what the failure to train was. And it wasn't any commentary on what a policy was about, you know, let's not immobilize people that are intoxicated, but they're saying that the failure to train was they failed to provide adequate training for EMTs in the handling of patients with suspected spinal cord injuries. In particular, the training and the need for immobilization was inadequate. And so that's where we come up to the... So your answer to my question is it's not alleged in the complaint as is inherent in the question I asked. My response would be that it is not relevant. It is not? It is not irrelevant to the analysis. It is not relevant to their claim because they say the core problem was they failed to train people to, EMTs, to immobilize people with spinal cord injuries. That's the allegation. I think I'm almost out of time. But the other point I would make is that then when we get into the... I think we've heard a little bit of some allegations or adding to the appellate record on the fly were confined to the allegations within the amended complaint. There's no allegation of pattern, practice, or custom. There's no allegations or allegations of plausible facts from which you could conclude that there was any decision maker that was deliberately indifferent to this alleged practice of failing to immobilize people with spinal cord injuries. It just does not exist. So I think what we're left with is the observation from city of Canton that I know is familiar with this court where the Supreme Court said plainly adequately trained officers occasionally make mistakes. The fact that they do so says little about the training program or the legal basis for holding the city liable.  You're a minute and a half. Yes. I'm out of time. Thank you. Okay. Thank you very much. Which means you get a couple of minutes. Thank you, Your Honor. Your Honor's asked if it was alleged, page 13 of the appendix, paragraph 29 of our complaint. Deliberate indifference to patients who appear to be intoxicated and minimization of their injuries is a policy of Defenda City, Ponca City, which the Defenda EMT's implemented. What paragraph number was that? Paragraph 29 of our original complaint. It's also in our amended complaint, too. But you're reading from your original complaint? Yes. That was the first one I came to. I was trying to... Understood. I'm sorry. Also, the testimony of Defendant Lawson, the EMT, and you have been on runs with other EMTs prior to the Gary Shower incident. Yes. And you felt the way it was conducted with Gary Shower was in keeping with Ponca City standards for handling the situation. Yes. If EMT Chief Eck, that's the head of all the EMTs, had been there, do you think he would have told you to do anything different? Or would you... Do you think you were following Ponca City guidelines in how this was handled that night with Gary Shower? After objections, the answer was yes. This is one of the EMTs? Yes. Opposing counsel was asked, so is there any scenario in which this could be a civil rights violation? He said it would be rare and unusual. And I think another way of saying it, yeah, I would have to shock the conscience. This matter, taken in light, as Your Honors pointed out, to opposing counsel with all the warnings, with the clear neurological deficits that were expressed, and they even... I want to... This is another EMT, her testimony. I do remember the guy telling us that he couldn't feel his legs. He was able to move his right arm up at one point. In my opinion, when a patient possibly has a broken neck or a neck injury, the basic protocol is that you completely immobilize the person so they can't move. We do that because if someone has that kind of injury and you move them, you can cause permanent injury. Thank you, counsel, for your arguments. The case is submitted and counsel are excused. Thank you.